1

1    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF MISSISSIPPI
2            OXFORD DIVISION

3    UNITED STATES OF AMERICA              PLAINTIFF

4    VS.                                   NO. 3:19-CR-65-8

5    LATROY DANIELS                        DEFENDANT

6

7               <u>CHANGE OF PLEA HEARING</u>

8

9         BEFORE HONORABLE DEBRA M. BROWN
          CHIEF UNITED STATES DISTRICT JUDGE
10

11           Greenville, Mississippi
                March 9, 2022
12

13   APPEARANCES:

14   For the Government:  PAUL D. ROBERTS, ESQUIRE
                          U.S. ATTORNEY'S OFFICE
15                        900 Jefferson Avenue
                          Oxford, Mississippi  38655
16

17   For the Defendant:   JOHN H. DANIELS, III, ESQUIRE
                          DYER, DYER, DYER & JONES
18                        Post Office Box 560
                          Greenville, Mississippi  38702-0560
19

20   Court Reporter:      BRENDA D. BLACKBURN, RPR, CCR #1087
                          FEDERAL OFFICIAL COURT REPORTER
21                        305 Main Street
                          Greenville, Mississippi  38701
22

23

24

25

2

1              (CALL TO ORDER OF COURT AT 11:01 A.M.)

2         **THE COURT:**  Good morning.  Be seated, please.

3         The Court next calls the United States of America versus

4    Latroy Daniels, 3:19-CR-65.  This is a change of plea

5    hearing.

6         Who is here as counsel for the government?

7              **MR. ROBERTS:**  Your Honor, Paul Roberts.

8              **THE COURT:**  Who is here as counsel for Mr. Daniels?

9              **MR. DANIELS:**  Good morning, Your Honor.  John

10   Daniels, for the defendant.

11             **THE COURT:**  And who is here representing probation?

12             **PROBATION OFFICER:**  Andrew Fountain, Your Honor.

13             **THE COURT:**  Thank you.

14        Counsel, you-all may stay at counsel table if you wish,

15   but you're certainly welcome to come to the podium if you

16   wish as well.  If you stay at counsel table, just make sure

17   that there is a microphone in front of you so that our court

18   reporter can get everything.

19        And, of course, Mr. Daniels, make sure that Mr. Daniels

20   has a -- you may want to slide, actually, that microphone

21   closer to him.  The one that's -- yeah.  There you go.  Thank

22   you.

23        So, we'll start by having the oath administered to

24   Mr. Daniels.

25             **COURTROOM DEPUTY:**  Please raise your right hand.

1            (OATH ADMINISTERED BY COURTROOM DEPUTY.)

2            **THE COURT:**  You're going to need to speak up,

3     Mr. Daniels.

4            **THE DEFENDANT:**  Yes, ma'am.

5            **THE COURT:**  Okay.  And you may remain seated.  That

6     way you'll be closer to the mike.

7         Mr. Daniels, I first want to ask you to confirm that you

8     are indeed Latroy Daniels?

9            **THE DEFENDANT:**  Yes, ma'am.

10           **THE COURT:**  What is your full name, Mr. Daniels?

11           **THE DEFENDANT:**  Latroy Daniels.

12           **THE COURT:**  Mr. Daniels, Counsel, could you make sure

13    his microphone is not on mute?

14           **MR. DANIELS:**  No, ma'am.  It has a green light

15    burning.

16           **THE COURT:**  Okay.  Can you pull the mike down closer

17    to him a bit.  We're having a hard time hearing him.

18         Mr. Daniels, I'll ask you to speak up.  No, you pull

19    your mask back up.  But just speak up, sir.

20         Try it again.

21           **THE DEFENDANT:**  Yes, ma'am.

22           **THE COURT:**  We are not getting good feed for some

23    reason.

24           **MR. DANIELS:**  We can come forward, Your Honor.

25           **THE COURT:**  That is fine.  The green light is on?

4

1      **THE DEFENDANT:**  Yes, ma'am.

2      **THE COURT:**  There we go.  Thank you.

3      **MR. DANIELS:**  Okay.

4      **THE COURT:**  Mr. Daniels, what is your full legal

5  name?

6      **THE DEFENDANT:**  Latroy Daniels, ma'am.

7      **THE COURT:**  You don't have a middle name?

8      **THE DEFENDANT:**  No, ma'am.

9      **THE COURT:**  Mr. Daniels, do you understand that you

10  are under oath and if you answer any question I ask you

11  falsely, your false answer may be used against you in a

12  prosecution for perjury for making a false statement?

13      **THE DEFENDANT:**  Yes, ma'am.

14      **THE COURT:**  Do you understand you have the right to

15  remain silent and not answer any of this Court's questions?

16      **THE DEFENDANT:**  Yes, ma'am.

17      **THE COURT:**  Mr. Daniels, I've been advised that you

18  now wish to plead guilty to Count 1 of the Second Superseding

19  Indictment pursuant to a Plea Agreement with the government.

20  Is that correct?

21      **THE DEFENDANT:**  Yes, ma'am.

22      **THE COURT:**  I have a number of questions to ask you

23  in that respect, Mr. Daniels.  The goal of these questions is

24  to make sure you're fully informed of your rights and that you

25  understand your rights in this proceeding.  So it is very

5

 1  important that if you do not understand a question I ask, that

 2  you stop and let me know so that I can clarify the question.

 3       Now, your counsel, Mr. Daniels, is there with you as

 4  well.  If you want to speak with him at any point in this

 5  proceeding, even if there's a question posed, just stop and

 6  let me know that as well, and we will make sure that you are

 7  able to have that private conversation with your attorney.

 8  So, do you understand that?

 9            THE DEFENDANT:  Yeah.

10            THE COURT:  Mr. Daniels, how old are you?

11            THE DEFENDANT:  44.

12            THE COURT:  What is the highest level of school that

13  you've completed?

14            THE DEFENDANT:  I have a GED, ma'am.

15            THE COURT:  What year did you get your GED, sir?

16            THE DEFENDANT:  2014.

17            THE COURT:  Okay.  Mr. Daniels, have you taken or

18  consumed any medication, drugs, or alcohol in the past 24 to 48

19  hours?

20            THE DEFENDANT:  I took my high blood pressure

21  medication.

22            THE COURT:  Okay.  When did you take that?

23            THE DEFENDANT:  Last night.

24            THE COURT:  Are you required to take it every

25  evening, or once a day, or twice a day?

6

1      **THE DEFENDANT:**  Once a day.

2      **THE COURT:**  Okay.  And you did take it last night, in

3  the evening?

4      **THE DEFENDANT:**  Yes, ma'am.

5      **THE COURT:**  Any other medication that you're

6  prescribed to take?

7      **THE DEFENDANT:**  No, ma'am.

8      **THE COURT:**  And does your high blood pressure

9  medication in any way affect you such that it makes you drowsy

10  or it interferes with your ability to understand things?

11      **THE DEFENDANT:**  No, ma'am.

12      **THE COURT:**  So you feel pretty good today and

13  you're -- you feel like you are one hundred percent as far as

14  understanding what's going to happen here today?

15      **THE DEFENDANT:**  Yes, ma'am.

16      **THE COURT:**  Okay.  Have you ever been treated or

17  hospitalized for an addiction to drugs?

18      **THE DEFENDANT:**  No, ma'am.

19      **THE COURT:**  Have you ever been treated or

20  hospitalized for any type of emotional or mental illness?

21      **THE DEFENDANT:**  No, ma'am.

22      **THE COURT:**  And do you have any physical or mental

23  condition that would prevent you from understanding the charges

24  against you or the consequences of the guilty plea?

25      **THE DEFENDANT:**  No, ma'am.

1    **THE COURT:**  Based on your responses, Mr. Daniels, I

2  do find you competent to enter a plea here today.

3    The next questions I have for you, Mr. Daniels, concern

4  your attorney's representation of you.  And to the extent

5  that you-all both have the same last name, I'm going to refer

6  to you as Mr. Daniels, and your attorney as Mr. John Daniels.

7    So, these questions are directed to you, Mr. Daniels,

8  about Mr. John Daniels.  Are you satisfied with Mr. John

9  Daniels' representation of you?

10    **THE DEFENDANT:**  Yes, ma'am.

11    **THE COURT:**  Have you had enough time to speak with

12  Mr. John Daniels about your case and have him answer any

13  questions you had to your satisfaction?

14    **THE DEFENDANT:**  Yes, ma'am.

15    **THE COURT:**  Do you believe that Mr. John Daniels has

16  represented your best interest in this case?

17    **THE DEFENDANT:**  Yes, ma'am.

18    **THE COURT:**  Very well, sir.

19    We're next, then, going to turn to the indictment

20  pending against you, specifically the Second Superseding

21  Indictment.  I'm going to just summarize what Count 1

22  charges.

23    Count 1 charges you with conspiring to participate in

24  racketeering activities, including to distribute and possess

25  with intent to distribute controlled substances for the

8

1    purpose of enriching, protecting, and enhancing your position

2    in the Gangster Disciples criminal enterprise, in violation

3    of Title 18 United States Code §1962(d).

4         Mr. Daniels, would you like the Court to read the Second

5    Superseding Indictment to you, or do you waive reading?

6              **THE DEFENDANT:**  Waive the reading.

7              **THE COURT:**  All right.

8              (COUNSEL CONFERRING WITH DEFENDANT.)

9         **THE COURT:**  Can you confirm for me, Mr. Daniels, that

10   you have indeed read the indictment yourself and discussed it

11   and your case with your attorney?

12             **THE DEFENDANT:**  Yes, ma'am.

13             **THE COURT:**  And are you fully aware of what you're

14   charged with in Count 1 of the Second Superseding Indictment?

15             **THE DEFENDANT:**  Yes, ma'am.

16             **THE COURT:**  There are certain elements of proof that

17   are associated with Count 1 of the Second Superseding

18   Indictment.  If for any reason your case went to trial, the

19   government would have to prove these elements against you

20   beyond a reasonable doubt before you could be found guilty.

21   For purposes of our record here today, I'm going to ask

22   Mr. Roberts, as the government's attorney, to read these

23   elements.

24        Mr. Roberts.

25             **MR. ROBERTS:**  Thank you, Your Honor.

1    Your Honor, to prove a RICO racketeering activity

2    conspiracy, the government must establish first, that two or

3    more people agreed to commit a substantive RICO offense; and

4    second, that the defendant knew of and agreed to the overall

5    objective of that RICO offense or racketeering offense.

6    To prove a substantive racketeering activity offense

7    requires that the government must prove first, the existence

8    of an enterprise that affected interstate commerce, such as

9    drug transactions; second, that the defendant was associated

10   with that enterprise; third, that the defendant participated

11   in the conduct of the enterprise's affairs; and fourth, that

12   that participation constituted a pattern of racketeering

13   activity.  A pattern occurs when a defendant commits at least

14   two predicate acts within two [sic] years.

15   Because it's a conspiracy, Your Honor, it doesn't

16   require that the defendant actually commit the two or more

17   racketeering acts, only that those affects -- acts be

18   committed and that the defendant adopt the goal of furthering

19   or facilitating the conspiracy to commit the RICO offense.

20        **THE COURT:**  Thank you.

21   Mr. Daniels, having heard the elements of proof, do you

22   have any questions about them or the nature of the charges

23   against you in Count 1 of the Second Superseding Indictment?

24        **THE DEFENDANT:**  No, ma'am.

25      **MR. DANIELS:**  Your Honor, may I say something,

1 please?

2     **THE COURT:** Yes.

3     **MR. DANIELS:** I would just want to point out we

4 recognize that in the penalty section of Count 1 of the

5 indictment, it says, "three years of supervised release," but

6 in the Elements it says, "five years supervised release." So,

7 I had brought that to Mr. Latroy Daniels' attention.

8     **THE COURT:** I recall us having a discussion about

9 this actually very recently. And I'm going to turn to our

10 probation officer to the extent that I would like the probation

11 officer to advise me about which one is the proper, based on

12 your understanding.

13     **PROBATION OFFICER:** It should be five years, Your

14 Honor. I believe that's the only way it was a error. We

15 discussed it ahead of time. I believe everything else is

16 correct.

17     **THE COURT:** Okay. Now, you point that out, Mr. John

18 Daniels.

19   Mr. Daniels, do you understand what your attorney just

20 mentioned to the Court with respect to the Notice of

21 Penalties?

22     **THE DEFENDANT:** Yes, ma'am.

23     **THE COURT:** And I'm going to go over the penalties

24 with you. I just want you to understand what your counsel just

25 mentioned. And to the extent that if for in any way it may

1  affect your decision whether or not you want to plead guilty to

2  Count 1 of the Second Superseding Indictment.  Okay, so you're

3  clear on it.  Do you have any questions about it at all at this

4  point?

5          **THE DEFENDANT:**  No.  It was clear.

6          **THE COURT:**  Okay.  Thank you, sir.

7          **THE DEFENDANT:**  Thank you.

8          **THE COURT:**  What we're going to do next, Mr. Daniels,

9  is turn to the maximum possible penalties applicable to Count 1

10  of the Second Superseding Indictment.  And they are:

11  Imprisonment for life, a fine of not more than $250,000,

12  supervised release after imprisonment for not more than five

13  years, and a special assessment of $100.

14      If you plead guilty here today, Mr. Daniels, and the

15  Court accepts your plea, then I'm going to sentence you at

16  sometime in the future.  Do you understand that if you're

17  sentenced to serve a term in prison, that you may be subject

18  to supervised release for a number of years after that term

19  has been satisfied?

20          **THE DEFENDANT:**  Yes, ma'am.

21          **THE COURT:**  Do you understand that if you violate one

22  or more of the conditions of supervised release, you may be

23  returned to prison for all or part of the supervised release

24  term?

25          **THE DEFENDANT:**  Yes, ma'am.

1        **THE COURT:** Do you understand all of the maximum

2  possible penalties that I've just mentioned?

3        **THE DEFENDANT:** Yes.

4        **THE COURT:** Okay. What we're going to move forward

5  with next is, I'm going to have the government state the facts

6  that the government would be prepared to prove against you if

7  your case went to trial.

8     Mr. Roberts, can you advise us of the government's

9  evidence against Mr. Daniels?

10       **MR. ROBERTS:** Yes, Your Honor. And this is lengthy,

11  and I apologize for the length, but it's involved.

12     Your Honor, at trial the government would establish the

13  following facts:

14     First, that the defendant, Mr. Daniels -- Latroy

15  Daniels, as set forth in Count 1 of the Second Superseding

16  Indictment, was a member of the Gangster Disciples, which is

17  a street gang operating nationwide, and which constitutes an

18  enterprise for federal law provisions under the RICO

19  statutes. The Gangster Disciples operate inside and outside

20  the state prison system in Mississippi, and there are members

21  in every state prison across the state including the

22  Mississippi State Penitentiary located at Parchman in

23  Sunflower County in Mississippi, which is within the Northern

24  Judicial District of Mississippi. And the Court would

25  ask that it take -- ask -- show that there was -- that the

13

1    Mississippi State Penitentiary at Parchman is within the

2    Northern Judicial District of Mississippi.

3         Mr. Daniels, as a member of Gangster Disciples, agreed

4    that a coconspirator would commit at least two acts of

5    racketeering involving narcotics, murder, attempted murder

6    obstruction of justice, money laundering, and intimidation of

7    witnesses or victims.

8         The evidence would show that the Gangster Disciples is a

9    street gang, which is a criminal organization with a national

10   presence.  The Gangster Disciples members are part of an

11   ongoing organization that has functioned continuously for a

12   common purpose since it's inception in the 1970's.  Since

13   that time, the organization has expanded to reach into

14   several states.  In the last twenty years, it has made a name

15   for itself as being one, if not the most violent and

16   prevalent gangs in Mississippi and within penitentiaries and

17   jails in the state of Mississippi.  The gang is known for its

18   criminal activities inside and outside the state prison

19   system, including murder, attempted murder, and drug

20   trafficking.

21        The gang's primary symbols used to indicate membership

22   are a six-point star, a heart with wings, an inverted

23   shepherd's cane, an inverted pyramid, or an inverted cross.

24   To become a member, there is an application process and a

25   background check conducted that investigates the aspiring

1   member.  Once initiated, a member receives a number usually

2   starting with a six.  Afterwards, the member is expected to

3   attend meetings regularly.  The structure of the organization

4   is a centralized authoritarian formal organization with

5   codes, a constitution, and strict rules and regulations

6   regarding activities.

7        The Gangster Disciples in the Mississippi State

8   Penitentiaries are members of the Folk Nation Alliance, which

9   consists of other violent criminal gangs, like the Simon City

10  Royals.  Correctional facilities are considered, quote,

11  plugged in, closed quote, when there are enough members of

12  Folk Nation Alliance, primarily either the Simon City Royals

13  or Gangster Disciples, to form a hierarchy within the

14  facility.  Once a facility is plugged in, a facility board is

15  formed that consists of members of the Gangster Disciples and

16  one or two members from the Simon City Royals.  While this

17  board is supposedly to act autonomously for the facility,

18  actions are taken at the direction of the ranking officers

19  from both the Simon City Royals and the Gangster Disciple

20  gangs.

21       The enterprise engages in narcotics trafficking, money

22  laundering, extortion, murder, and attempted murder.  The

23  Gangster Disciple enterprise is clearly engaged in interstate

24  commerce, and evidence would show by witness testimony and

25  seized evidence that its members and associates distribute

1  methamphetamine across state lines using the United States

2  mail and Visa/Mastercard prepaid debit or stored value cards

3  to engage in money laundering.  This is often facilitated by

4  the use of wire and electronic communications via cellular or

5  landline phones as well as e-mail, internet, and the wiring

6  either through Money Gram or Western Union facilities.

7  Cooperating conspirators confirm that narcotics are typically

8  procured from sources in other states such as California and

9  Arizona.  The Gangster Disciples also employ encrypted

10  messaging applications like Telegram to conduct daily

11  meetings.  Contraband cellular telephones allow the

12  enterprise to conduct conference calls.

13      The evidence would show that Mr. Daniels was a 21.3 or a

14  leader of the -- in the Eastern Mississippi Central Facility

15  State Prison, which I believe is located in the Southern

16  District.  He was identified by Mississippi Department of

17  Corrections officials as a member of the Gangster Disciples.

18  The evidence would show that he has tattoos consistent with

19  that gang membership.  Witnesses would testify and identify

20  him as a ranking member of the organization.  An E-mail from

21  the gang's members identify him as being in the Gangster

22  Disciples.

23      The government would show by literally thousands,

24  hundreds and thousands -- hundreds of text messages and

25  e-mails where the defendant participated in selling

1  narcotics, including evidence that he and other defendants

2  set up transactions, setting prices and quality -- quantities

3  to be sold or purchased.  Daniels, as the leader at the

4  facility in the Southern District oversaw disputes arising

5  from the drugs being taken up by guards, debts resolved from

6  the sale of drugs, and the planning or orchestrating of how

7  to transfer funds from the sale of drugs.

8      Specifically, evidence would show on May of 2018,

9  Mr. Daniels and the other named defendants in the indictment:

10  Gregory Moffett, and Michael Willie conspired to kill members

11  of a rival gang.  Specifically, around May 15, 2018, members

12  of the Gangster Disciples and Simon City Royals planned to

13  execute a, quote, bag and tag, closed quote, order against

14  two individuals who were imprisoned at the East Mississippi

15  Correctional Facility in Meridian.  This bag and tag order

16  was ordered after one of the victims disrespected a

17  high-ranking member of the Simon City Royals, Jonathan Davis,

18  also known as Merc.  Davis reported this incident to the

19  board of the gang consisting of the Gangster Disciples and

20  Simon City Royals gang members located across the state in

21  both this district and the Southern District of Mississippi,

22  and there were various members of the board, including the

23  defendant, and the other named defendants and other

24  individuals.  This membership leader group ordered the

25  bagging and tagging of these two victims.

1    After receiving the order, several of the gang members

2 carried shanks; that is, metal objects sharpened at one end,

3 and used them to assault both victims.  Afterwards, the

4 prison staff recovered a 22-inch metal pipe, an 8-inch metal

5 hook, a 12-inch wooden stick, and a 7-inch shank.  Both

6 victims sustained serious bodily injuries as a result of the

7 attack.

8    Federal law enforcement obtained and set forth several

9 reports compiled by the organization as well as reports

10 compiled by participants in the crime.  The gang members are

11 required to draft and file after-action-reports.  And as

12 such, law enforcement is in possession of several of these

13 reports which detail the planning, the participation, and the

14 reasons for the attack on the two.

15    Your Honor, as far as venue, as noted, the Gangster

16 Disciples and this particular RICO organization exists and go

17 in all the state of Mississippi, but including the

18 Mississippi State Penitentiary located at Parchman, Sunflower

19 County.  And as the Court is aware, venue for conspiracy

20 occurs not just in a district where particular overt acts or

21 crimes are committed but everywhere where the conspiracy

22 exists and where people are joining wilfully, which include

23 the Northern District of Mississippi, which is why we have

24 that Venue.

25        **THE COURT:**  Very well.  Mr. Daniels, so you heard the

18

1   government state the evidence that is pending against you.  Did

2   you -- were you able to hear and understand everything?

3             **THE DEFENDANT:**  Yes, ma'am.

4             **THE COURT:**  Is everything that was said about you and

5   about your conduct true and correct?

6             **MR. DANIELS:**  Your Honor, Mr. Daniels and I -- Latroy

7   Daniels and I have gone over extensively the factual basis as

8   the government provided that to us early on, and we appreciate

9   that.  In discussing that, if it is acceptable to the Court, we

10  felt that the best response was that we acknowledge that the

11  government can prove its case.  You know, there's a varied

12  amount of information in the Factual Basis, and we are hopeful

13  that the Court will accept that response, if Your Honor please.

14            **THE COURT:**  So you are willing to admit that there is

15  sufficient factual basis to constitute the elements of the

16  offense in Count 1 of the Second Superseding Indictment?

17            **MR. DANIELS:**  That's -- that is essentially what I am

18  saying, Your Honor.  And I would like my client to acknowledge

19  that as well.

20            **THE DEFENDANT:**  Yes, ma'am.

21            **THE COURT:**  Is there anything in particular in the

22  Factual Basis that you disagree with, Mr. Daniels?

23            **MR. DANIELS:**  Well, not to be placed on the spot,

24  Your Honor, but, you know, there's just a lot of information in

25  this Factual Basis.  More so than I probably have seen in the

1    last 37, '8 years that I've been doing this.  Most of them are

2    pretty short, you know.  But certainly can acknowledge that the

3    government can prove its case in this matter.

4              **THE COURT:**  I can accept that.  What I would like to

5    know, though, if there is something that Mr. Daniels adamantly

6    opposes or says is not correct, then that's something that this

7    Court would like to know.  I want to find that there is a

8    sufficient factual basis.  You've said that it is sufficient to

9    prove the elements of the crime.  But the Court is -- to the

10   extent that I believe I have an obligation to understand what

11   specific parts of the Factual Basis that Mr. Daniels is willing

12   to acknowledge, then I would just like to know more.  You're

13   right it is a long Factual Basis.  But certainly you've had the

14   opportunity to communicate with Mr. Daniels about that.  And if

15   you-all need more time to do that, that's fine.  But I -- I

16   would like to know more to the extent --

17             **MR. DANIELS:**  What the Court would like to know is

18   what about the Factual Basis that there may be a disagreement?

19             **THE COURT:**  Yes.

20             **MR. DANIELS:**  And the disagreement could be that all

21   of the matters within the Factual Basis while, you know,

22   there -- there are some things about -- well, excuse me.

23             **THE COURT:**  Okay.  Sure.

24      Hey, mute your mike if you-all are going to talk; give

25   you some privacy.

1              (COUNSEL AND DEFENDANT CONFERRING.)

2         **THE COURT:**  And I'll tell you what, Mr. Daniels, and

3    Mr. Daniels, while y'all are doing that, I'm going to take a

4    short break.  So you-all take as much time as you need.

5         Court will be in recess until I come back on the bench.

6          (Recessed:  11:26 A.M.)

7          (Convened:  11:33 A.M.)

8         **THE COURT:**  You may be seated.

9        So before we took a very short break, we were speaking

10   about the Factual Basis.  And Mr. Daniels, and Mr. Daniels

11   wanted to consult about that.  I think I had a question

12   posed.  But I will give y'all the opportunity to speak

13   initially, if you would like.

14        **MR. DANIELS:**  Your Honor, we did have time to confer.

15   And Mr. Daniels does have a -- Mr. Latroy Daniels does have a

16   response as to the factual basis.

17             **THE COURT:**  All right, Mr. Daniels.

18             **THE DEFENDANT:**  I agree to the Factual Basis.

19        **MR. DANIELS:**  You got to speak up again.  I didn't

20   hear you.

21             **THE DEFENDANT:**  I said I agree to the Factual Basis.

22             **THE COURT:**  All right.  Thank you, sir.

23        Mr. Daniels, is it your intent to plead guilty

24   voluntarily and of your own free will because you are in fact

25   guilty of the charges in Count 1 of the Second Superseding

1    Indictment?

2              **THE DEFENDANT:**  Yes, ma'am.

3              **THE COURT:**  Has anyone threatened you or in any way

4    attempted to force you to plead guilty?

5              **THE DEFENDANT:**  No, ma'am.

6              **THE COURT:**  The Court finds, then, that there is a

7    factual basis for Mr. Daniels to enter a plea in this case.

8         Mr. Daniels, we're next then going to turn to the Plea

9    Agreement that you entered into with the government.  And

10   we're going to start out by me asking the government's

11   attorney to state the terms of the Plea Agreement.

12        Mr. Roberts.

13             **MR. ROBERTS:**  Yes, Your Honor.  I have the originals

14   here.  We've made some just minor changes to the Plea

15   Supplement, which I'll explain.

16        Your Honor, the defendant agrees to plead guilty under

17   oath to Count 1 of the Second Superseding Indictment charging

18   him with RICO conspiracy with the penalties of not more than

19   life imprisonment, a fine of up to $250,000, not more than

20   five-year term of supervised release at the end of any

21   imprisonment term, and a special assessment of $100.

22        The United States agrees not to charge the defendant

23   with any other offense arising from or related to that

24   charged and to dismiss the remaining counts of the indictment

25   as to him upon sentencing.

1    The parties agree that the agreement is limited to the

2  United States Attorney for the Northern District of

3  Mississippi and does not, and cannot apply to any other

4  federal, state, or local prosecuting authority or

5  administrative or regulatory authorities.  The agreement only

6  applies to the crimes committed by the defendant.  It does

7  not apply to any pending forfeiture proceedings, and does not

8  include any past, present, or future civil, or forfeiture

9  agreements.

10    The defendant agrees that if he breaches or otherwise

11  violates any provision of the Plea Agreement, including

12  attempting to withdraw from the already entered guilty plea,

13  that the government would be released from any sentencing

14  agreements or recommendations that the parties agree to and

15  would be free to argue for any sentence within the statutory

16  limits.  Also, should he have already pled guilty or been

17  sentenced, the defendant's guilty plea or sentence would be

18  in effect, and any breach would not constitute a right to

19  withdraw from the guilty plea.

20    The defendant understands that if he breaches the Plea

21  Agreement, that any statement made during the plea colloquy

22  might be used against him in any criminal prosecution, and he

23  knowingly, and intelligently, and voluntarily waives any

24  objection he might raise under the rules of evidence or

25  criminal procedure which would make such admissions

1  inadmissible in a trial.

2      The defendant understands that the Court could order

3  restitution in accordance with the provisions of the federal

4  law for all offenses committed, and agrees that restitution

5  is not limited to the count of conviction.

6      The defendant agrees except for grounds of prosecutorial

7  misconduct and ineffective assistance of counsel, he

8  expressly waives all rights to appeal the conviction or

9  sentence imposed in the case and the manner in which the

10 sentence was imposed on any ground, including but not limited

11 to the grounds set forth in 18 U.S.C. §3742.

12      Again, except for allegations of ineffective assistance

13 of prosecutorial misconduct and ineffective assistance of

14 counsel, he also expressly waives any right to contest or

15 collaterally attack the conviction or sentence, the way the

16 sentence was imposed in any post-conviction proceeding,

17 including those brought pursuant to 28 U.S.C. §2255.  He is

18 waiving these rights in exchange for the concessions and

19 recommendations of the United States in the Plea Agreement

20 and Supplement.

21      There is an acknowledgement, Your Honor, in which the

22 defendant acknowledges that apart from being advised of the

23 applicability of the sentencing guidelines and the agreements

24 in the plea documents, no promise or representation has been

25 made to him as to what punishment the Court might impose if

1    it accepts his guilty plea.  That the plea documents reflect

2    all promises, agreements, and understandings between him and

3    the U.S. Attorney.  That the plea documents and the Plea

4    Agreement is knowing, free, and voluntary, and is not the

5    product of force, threat, or coercion, and that he's pleading

6    guilty because he is in fact guilty of the charge.

7         Your Honor, in the Plea Supplement, which will be filed

8    under seal, I would note that there is some language that is

9    confusing about Rule 11(c)(1)(C).  And I would note that in

10   paragraph four of the Plea Supplement, that we have changed

11   it to read --

12        **THE COURT:**  Mr. Roberts, why don't you bring forward,

13   as opposed to reading for the record, to the extent that the

14   Plea Supplement will be filed under seal, and let the Court

15   review it.  And then I'll have some questions --

16        **MR. ROBERTS:**  Okay.

17        **THE COURT:**  -- for Mr. Daniels, without referring

18   directly to what the paragraph says.

19        **MR. ROBERTS:**  Okay.  I'll hand those -- the original

20   Plea Agreement and Plea Supplement with the interlineations and

21   the signature -- and the initials.

22        **THE COURT:**  The changes that were made to the

23   paragraph referenced in the Plea Supplement, you-all just did

24   it today on the spot in here?

25        **MR. DANIELS:**  Yes, ma'am.  And we acknowledge that.

1    **THE COURT:** Okay.

2    **MR. DANIELS:** And the Court pointed that out to us,

3    and I appreciate that.

4    **THE COURT:** What I would like to do then, I want --

5    because I have some specific questions for Mr. Daniels about it

6    -- I'm going to have a member of my staff make a copy of this.

7    Because I want him to have it in front of him when he does it.

8    And especially since -- Mr. Roberts, I don't know what you-all

9    did to this, tried to tear it up. But let's just try and get a

10   copy.

11   **MR. ROBERTS:** Yeah, that's -- I've got it sort of

12   torn up. I don't recall -- I don't think I did that.

13   **THE COURT:** Okay. So, Mr. John Daniels did?

14   **MR. ROBERTS:** It's -- when I got it from the original

15   prosecutor, it was kind of torn up.

16   **THE COURT:** Okay. Well, that will be our original

17   since you-all made those changes today here on the spot. So I

18   just want to make sure that we maintain whatever integrity we

19   can as to the physical copy of the document.

20   **MR. ROBERTS:** Yes, Your Honor.

21   (PAUSE.)

22   **THE COURT:** And while we're waiting on one of my law

23   clerks to bring that back, Mr. Daniels, I heard something ring

24   over your way. Mr. John Daniels.

25   **MR. DANIELS:** Ma'am?

26

1          **THE COURT:**  I heard something ring over your way.

2   Phone?  Watch?

3          **MR. DANIELS:**  I did not understand the Court.

4          **THE COURT:**  Something rang.  Rang, ringing.  I heard

5   a phone ring.

6          **MR. DANIELS:**  Oh, yes.  Well, actually, it wasn't my

7   phone, Judge.

8          **THE COURT:**  Well, I said watch.

9          **MR. DANIELS:**  It was my watch.

10         **THE COURT:**  I understood that.  That's why I

11  mentioned watch.  But before you speak further, I'm just

12  telling you, I think this is the first time such a thing on

13  your person has rung.  So I'm just saying for the record here,

14  warning you that if I hear that subsequently, I don't care if

15  it's another case, then there will be some consequences --

16         **MR. DANIELS:**  Sure.

17         **THE COURT:**  -- you may not be pleased with.

18         **MR. DANIELS:**  But, Your Honor --

19         **THE COURT:**  So I understand all of these smart phones

20  and everything.  And you can silence them, just like the phone.

21  You can silence the watch or put it on Do Not Disturb.  So, you

22  just need to make sure you do that before you --

23         **MR. DANIELS:**  Sure.

24         **THE COURT:**  -- enter this courtroom.

25         **MR. DANIELS:**  Your Honor, I swear to you I do not

27

1    know how to cut this thing off.

2             **THE COURT:**  Well, then, you should have left it at

3    home.

4             **MR. DANIELS:**  So, the phone is cut off.  It's the

5    watch that I don't know how to cut off.

6             **THE COURT:**  That's -- you've acknowledged what the

7    problem is.  If you don't know, you should have left it at

8    home, taken it off, or turned it off.

9             **MR. DANIELS:**  Well, I bought this back at Christmas,

10   Your Honor.  I am really connected now.

11            **THE COURT:**  That's very nice and everything.  But

12   what I'm telling you is, as of today, you've been warned.  And

13   you --

14            **MR. DANIELS:**  I'm not --

15            **THE COURT:**  -- keep talking.

16            **MR. DANIELS:**  I fully understand.

17            **THE COURT:**  I'm not finished talking.

18            **MR. DANIELS:**  If the --

19            **THE COURT:**  Even in another case, then either that

20   watch may become the property of someone else, or there may be

21   a fine associated with it.  So, fair warning.  We've got plenty

22   of witnesses here in the courtroom.

23         All right, thank you.  Would you give one copy to

24   Mr. Daniels?

25            **MR. ROBERTS:**  Yes.

28

1      **MR. DANIELS:**  Thank you.

2      **THE COURT:**  And then did you just make one copy?  I'm

3  sorry.  Okay.

4      Do you need this back, Mr. Roberts?

5      **MR. ROBERTS:**  Your Honor, that's the original for

6  filing at the end of the proceeding.  So, I'll leave it to Your

7  Honor.

8      **THE COURT:**  Okay.

9      You all ready over there Mr. Daniels, and Mr. Daniels?

10      **MR. DANIELS:**  We have the Plea Supplement, Your

11  Honor.  He's reviewing it.

12      **THE COURT:**  Okay.  Take your time.  You-all let me

13  know when you're ready.  I just have some questions for

14  Mr. Latroy Daniels.

15      (PAUSE.)

16      **MR. DANIELS:**  Yes, Your Honor.  The copy that we have

17  of the Plea Supplement recognizes the changes that were made.

18  And as the Court can see, these are our initials.

19      **THE COURT:**  Well, that's what I want to have

20  Mr. Latroy Daniels confirm.

21      **MR. DANIELS:**  Yes, ma'am.

22      **THE COURT:**  Mr. Daniels, so you've seen a copy of the

23  edits, and I understand that you may have been present when

24  counsel was speaking about them before.  So, you understand why

25  they were made?

1    **THE DEFENDANT:**  Yeah, that's what I was trying to get

2    understood.

3    **THE COURT:**  Okay.  You -- do you understand why they

4    were made?

5    (COUNSEL CONFERRING WITH DEFENDANT.)

6    **THE COURT:**  Mr. Daniels, what I was going to say,

7    turn off your mike if you want to have some in-depth

8    conversations.

9    **MR. DANIELS:**  No need, Your Honor.

10   **THE DEFENDANT:**  Yes, I understood.

11   **THE COURT:**  Are y'all done?

12   Okay, so, I'm not going to ask you some specific

13   questions.  But I just want to make sure you understand why

14   the edits were made.  Do you understand why the edits were

15   made?

16   **THE DEFENDANT:**  Yes, ma'am.

17   **THE COURT:**  And then to the extent that there is a --

18   some initials that are indicated beside where the edits are

19   made, is that where you actually initialed to say that you

20   agree with the edits?

21   **THE DEFENDANT:**  Yes, ma'am.

22   **THE COURT:**  Okay.  And these edits are important for

23   one of the reasons that I'm going to explain to you later, or

24   at least reference, because it determines whether or not you

25   have certain rights.  So I just want to make sure that you

1  understand why the change was made.  And as Mr. Daniels, your

2  counsel, mentioned, it's something that I noticed even before

3  we got here in the courtroom today that I wanted to have

4  cleared up so that when you enter your plea that you're well

5  aware of all of these changes.  So if you have any questions or

6  anything about it, again, just let us know.  But I want to make

7  sure that you are clear about it.  So you're good right now?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  Okay.  Very good.

10      In going through the terms of the Plea Agreement,

11  Mr. Daniels, the government's counsel mentioned a provision

12  about your waiver of appeals and collateral attacks on the

13  sentencing judgment.  So I just want to make sure that you

14  specifically understand that by signing this Plea Agreement,

15  and if the Court accepts the plea, that you will have waived

16  all of your rights to appeal your conviction and your

17  sentence except for any claims as to prosecutorial misconduct

18  or ineffective assistance of counsel.  Do you understand

19  that?

20           THE DEFENDANT:  Yes, ma'am.

21           THE COURT:  Okay, speak up a little louder.

22           THE DEFENDANT:  Yes, ma'am.

23           THE COURT:  Okay.  Do you understand all of the terms

24  of the plea documents, Mr. Daniels?

25           THE DEFENDANT:  Yes.  That I'm pleading to ten years

1   or five years supervision.

2          THE COURT:  Well, let me ask you -- my question was

3   broad.  In both the Plea Agreement and the Plea Supplement, do

4   you understand all of their terms in general?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Okay.  Now, you were, I think, ready to

7   comment about something that's in this Plea Supplement that we

8   just talked about.  I don't mind you asking the question.  But

9   I want to remind you that this is going to be filed under seal.

10  But if you want to have a discussion about it, we can do that.

11  I can either seal the transcript or I can -- well, I don't know

12  any other way do it.  It's going to be filed under seal anyway,

13  that document will be.  But if you start talking about it,

14  because this is a public hearing, then that's going to put all

15  of that out in the open.  But it's your choice.  So, if you

16  have a specific question, you ask that, and then I will seal

17  the transcript.  So, you tell me what you want do.

18         THE DEFENDANT:  I just was agreeing to the plea that

19  was on the paper.

20         THE COURT:  Well, speak up a little bit.

21         THE DEFENDANT:  I just agreed to the plea that was --

22  that I signed to on the paper.

23         THE COURT:  Okay.  And I asked did you understand

24  everything.  And so I think in response to that question, you

25  started asking me -- or at least making a comment about a

32

1 certain provision of the Plea Agreement.

2        **THE DEFENDANT:** Yes, ma'am.

3        **THE COURT:** So, you understand that provision, too,

4 though, right?

5        **THE DEFENDANT:** Yes, ma'am.

6        **THE COURT:** Okay. Did you have the opportunity to

7 read and discuss the plea documents with your attorney before

8 you signed them? And when I say "signed," I mean where it's

9 indicated that you signed the Plea Agreement and the Plea

10 Supplement and where you initialed the changes that we just

11 talked about?

12        **THE DEFENDANT:** Yes, ma'am.

13        **THE COURT:** Okay. And I'm holding up the Plea

14 Supplement. There is a separate Plea Agreement, and there is a

15 signature on that that is shown to be yours, too. Can you

16 confirm that you signed the Plea Agreement, too?

17        (PAUSE.)

18        **THE DEFENDANT:** Yes, ma'am.

19        **THE COURT:** Okay. All right. So, some questions for

20 Mr. John Daniels.

21     Now, Mr. John Daniels, before Mr. Daniels signed the

22 plea documents, can you confirm that you discussed them --

23 the terms of the documents with him and reviewed the facts of

24 the case and the government's evidence?

25        **MR. DANIELS:** Yes, ma'am. We have been over that

1    quite a bit, and we did an extensive examination of the Plea

2    Agreement and the Plea Supplement.  And I explained to

3    Mr. Latroy Daniels the effect of the 11(c)(1)(C) issue that the

4    Court correctly advised us on.

5         **THE COURT:**  All right.  Very good.  Do you believe

6    that Mr. Daniels will be entering into this plea freely and

7    voluntarily with full knowledge of the charges and the

8    consequences of the guilty plea?

9         **MR. DANIELS:**  Absolutely.

10        **THE COURT:**  All right, the Plea Agreement will be

11   filed; the Plea Supplement will be filed under seal.

12        Mr. Daniels, do you understand that the offense in

13   Count 1 is a felony?

14        **THE DEFENDANT:**  Yes, ma'am.

15        **THE COURT:**  And you know what, before -- I want to

16   ask you one other question, too, though.  And it is about the

17   plea documents.  Before we move on.

18        Do you understand that if this Court rejects the Plea

19   Agreement, which would include the Plea Supplement, then you

20   will not have -- oh, no -- you will have a right to withdraw

21   your guilty plea, if I reject the plea documents?  Do you

22   understand that?

23        **THE DEFENDANT:**  Yes, ma'am.

24        **THE COURT:**  I'm sorry.  I didn't mean to confuse you.

25   I just wanted to make sure I advise you correctly.

1      Okay.  Do you understand that if you don't reject --

2  excuse me.  Let me start over.  Do you understand that if you

3  don't withdraw your guilty plea in the event that the Court

4  does not accept the Plea Agreement, then I may sentence you

5  to a term that is more severe than what is called for in the

6  plea documents?

7          **THE DEFENDANT:**  Repeat -- repeat that.

8          **THE COURT:**  I'm sorry.  I don't mean to be confusing.

9  I just -- you just told me that you understood that if I reject

10  the Plea Agreement that I'll give you the opportunity to

11  withdraw your guilty plea; right?

12          **THE DEFENDANT:**  Yes, ma'am.

13          **THE COURT:**  Okay.  If you don't withdraw your guilty

14  plea in that instance, do you understand that I may sentence

15  you to a term of prison that is longer or harsher than what is

16  called for in the plea documents?  And this is only if you

17  don't withdraw your guilty plea.

18          **THE DEFENDANT:**  Yes, ma'am.

19          **THE COURT:**  Okay.  Now, saying that you understand

20  that the offense in Count 1 is a felony, do you understand that

21  if you plead guilty to that felony and I accept your plea, then

22  you may be deprived of certain civil rights, such as the right

23  to vote, hold public office, sit on a jury, and possess any

24  kind of firearm whatsoever?

25          **THE DEFENDANT:**  Yes, ma'am.

1          **THE COURT:**  To the extent that I will be sentencing

2  you, Mr. Daniels, I'm going to be guided by the United States

3  Sentencing Commission's guidelines.  Now, those guidelines are

4  only advisory.  So I am not bound to follow them if I choose

5  not to do so.  Have you and your attorney discussed how the

6  sentencing guidelines might apply to your case?

7          **THE DEFENDANT:**  Yes, ma'am.

8          **THE COURT:**  Do you understand that your guideline

9  sentence won't be able to be determined until after a

10  Presentence Investigation Report has been prepared and you've

11  had the opportunity to review that report and determine whether

12  or not you have any objections to anything in it, whether it's

13  facts or the guidelines recommended by the probation officer?

14          **THE DEFENDANT:**  Yes, ma'am.

15          **THE COURT:**  Do you understand that after your

16  guideline range has been determined, the Court has the

17  authority in some circumstances to depart upward or downward

18  from the guidelines; and all that means is the Court can impose

19  a sentence that is more severe or less severe than what is

20  called for by the guidelines?

21          **THE DEFENDANT:**  Yes.

22          **THE COURT:**  Okay.  Do you understand that regardless

23  of the guidelines range, the Court has the authority to

24  sentence you up to the maximum time allowed by law?

25          **THE DEFENDANT:**  Yes, ma'am.

1    **THE COURT:** Okay. And then finally on that subject,

2    do you understand that if you are sentenced to serve time in

3    prison, you're not going to be released on parole with respect

4    to your federal sentence, because parole has been abolished in

5    this federal court?

6         **THE DEFENDANT:** Yes.

7         **THE COURT:** Okay. So I've got a final set of

8    questions for you, Mr. Daniels, before I ask for your plea.

9    These questions concern your constitutional rights,

10   particularly your giving up of these rights if you plead guilty

11   here today. A lot of these questions are going to start with

12   "Do you understand," just as these other questions have.

13   Because it is important that you understand before you respond.

14        Do you understand you have the right to plead not

15   guilty?

16        **THE DEFENDANT:** Yes, ma'am.

17        **THE COURT:** Do you understand that under the laws of

18   this country and the Constitution, you're entitled to a speedy

19   and public trial by jury on the charges against you?

20        **THE DEFENDANT:** Yes, ma'am.

21        **THE COURT:** Do you understand that if you had a

22   trial, the government's witnesses would have to come into court

23   and testify in your presence; that your attorney could

24   cross-examine the government's witnesses; and your attorney

25   could call witnesses to testify on your behalf?

1         **THE DEFENDANT:**  Yes, ma'am.

2         **THE COURT:**  Do you understand that if you had a

3  trial, you would be presumed innocent of the charges, and the

4  government would have to prove your guilt beyond a reasonable

5  doubt before you could be found guilty?

6         **THE DEFENDANT:**  Yes, ma'am.

7         **THE COURT:**  Do you understand that if you had a

8  trial, you would have the right to require that witnesses come

9  to court and testify in your presence?

10         **THE DEFENDANT:**  Yes, ma'am.

11         **THE COURT:**  I'm sorry?

12         **THE DEFENDANT:**  Yes, ma'am.

13         **THE COURT:**  Okay.  If you had a trial, are you aware

14  that if you wished to testify in your own defense, you would

15  have the right to do so, but if you chose not to testify, the

16  fact that you did not testify could not be used against you?

17         **THE DEFENDANT:**  Yes, ma'am.

18         **THE COURT:**  Do you understand that if you had a trial

19  and you were convicted, you would have the right to appeal both

20  your sentence and your conviction?

21         **THE DEFENDANT:**  Yes, ma'am.

22         **THE COURT:**  Based upon your responses, Mr. Daniels,

23  can you confirm for me that you understand that if you plead

24  guilty to Count 1 of the Second Superseding Indictment, there's

25  not going to be a trial; I'm going to enter a judgment of

38

1  guilty based on your plea, and then I'm going to sentence you

2  after I've considered a Presentence Investigation Report?

3  　　　　　THE DEFENDANT:  Yes, ma'am.

4  　　　　　THE COURT:  Okay.  Do you have any questions at all

5  about your constitutional rights or waiving your rights,

6  Mr. Daniels?

7  　　　　　THE DEFENDANT:  No, ma'am.

8  　　　　　THE COURT:  Have you specifically discussed waiving

9  your rights with your attorney?

10  　　　　　THE DEFENDANT:  Yes, ma'am.

11  　　　　　THE COURT:  Even having discussed it with your

12  attorney, do you still wish to plead guilty to Count 1 of the

13  Second Superseding Indictment?

14  　　　　　THE DEFENDANT:  Yes, ma'am.

15  　　　　　THE COURT:  Mr. Daniels, I'm ready to ask you for you

16  plea.  If there are any questions you have or any concerns,

17  this would be the time to raise them.  Do you have any

18  questions or concerns that you would like to raise to the

19  Court?

20  　　　　　THE DEFENDANT:  No, ma'am.

21  　　　　　THE COURT:  In the case of the United States of

22  America versus Latroy Daniels, Mr. Daniels, how do you plead to

23  Count 1 of the Second Superseding Indictment?

24  　　　　　THE DEFENDANT:  Guilty.

25  　　　　　THE COURT:  It is the finding of this Court, then, in

1    this case, Mr. Daniels, that you're fully competent and capable

2    of entering an informed plea; that you're aware of the nature

3    of the charges and the consequences of the guilty plea; and

4    that your guilty plea is knowing, voluntary, and supported by

5    an independent basis and fact which contains each of the

6    essential elements of the offense and it is not the result of

7    force, threats, or promises.

8          The Court, therefore, accepts your plea, Mr. Daniels,

9    and you're now adjudged guilty of the charges in Count 1 of

10   the Second Superseding Indictment.

11         You've heard me mention the Presentence Report,

12   Mr. Daniels.  I'm going to enter an order requiring the

13   probation office to prepare one.  You're going to be

14   questioned for purposes of that report.  I recommend that you

15   have your attorney present while you're being questioned by

16   the probation officer.  I also recommend that you honestly

17   answer those questions.  It is important, because your

18   responses will be incorporated into the Presentence Report.

19   That Presentence Report is the thing that I rely on most in

20   determining what I believe is an appropriate sentence.  So

21   that's just my recommendation to you.  There probably are

22   some things you would rather not talk about, but it is

23   important that I know them, so that I can determine what an

24   appropriate sentence is.

25         I'm going to set your sentencing -- I'm going to set

1  your sentencing hearing for June 29, 2022, unless someone

2  lets me know that they have a conflict with that date.

3        **MR. ROBERTS:**  I'm not aware of any conflict on behalf

4  of the government, Your Honor.

5        **THE COURT:**  Okay.

6      Mr. Daniels, I just knew you were going to say, since

7  you didn't have your watch anymore.

8        **MR. DANIELS:**  Your Honor, if I had my watch, I could

9  tell you, Your Honor.  Hold on just a minute, Your Honor.

10        **THE COURT:**  You can let me know afterwards then.

11        **MR. DANIELS:**  Oh, no.  I can look right now.  I have

12  my phone.  You said June 29?

13        **THE COURT:**  June 29.  That is a Wednesday.

14        **MR. DANIELS:**  I have a trial on the 28th, Your Honor,

15  starting in Sunflower County, Mississippi.  And if the case is

16  tried, then it would go a week or so, but --

17        **THE COURT:**  Would you prefer that I go ahead and

18  move -- give you another date now, or do you want to wait and

19  see if your case goes to trial.

20        **MR. DANIELS:**  If the Court doesn't mind, I would

21  really like to just leave it there on the 29th.  And I'll give

22  the Court ample notice.  There's a chance that the young man

23  may plead.

24        **THE COURT:**  Okay.  So, unless Mr. Daniels notifies --

25  Mr. John Daniels notifies us otherwise, sentencing for now is

41

1   set for June 29, 2022.

2       Mr. Daniels, we set it so far in the future to give the

3   probation officer enough time to put together that

4   Presentence Report.  And I've already told you how important

5   it is.  And so we want to make sure that there is enough time

6   to put that together.

7       Now, at your sentencing hearing, you're going to have

8   the opportunity to speak on your on behalf.  You don't have

9   to, if you don't want to.  But if you are interested in

10  telling me something that you want me to take into

11  consideration, I am always willing to hear that, and I will

12  take it into consideration.  But it is up to you.  Even if

13  you don't speak, your attorney will have the opportunity to

14  speak on your behalf.  So, just give that some thought, you

15  know, as you move forward.

16      The other thing that I want to let you know about is,

17  you may submit sentencing reference letters written by people

18  who know you that you want me to take into consideration too

19  while I'm sentencing you.  You are not required to submit

20  these letters at all.  If you decide that you don't want to

21  ask anyone to write a letter on your behalf, it is in no way

22  held against you at all.  But if you would like someone to

23  write a letter on your behalf, all I ask is that you try to

24  go ahead and get those done, those requests made to whoever

25  you want.  It can be friends, family, people in your

42

1    community, people you've known, people you grew up with. It

2    can be from anyone. If there is something that you know that

3    they have to say about you that you want me to take into

4    consideration, go ahead and have them write them. They can

5    be sent to your attorney and they can be docketed in your

6    case, so that I can make sure to see them before your

7    sentencing hearing. And I tell you, I read every single word

8    of those letters, too. A lot of times, it shows me a

9    different side of a defendant that is not reflected in the

10   Presentence Report. But it is entirely up to you.

11          Let's see. I think we have -- oh, I did not -- I did

12   not mention how I'm going to decide on the Plea Agreement.

13          The Court is going to defer a decision on the Plea

14   Agreement for now. I will tell you what that decision is at

15   your sentencing hearing, or maybe sometime before, if needs

16   be. But the Plea Agreement is deferred at this point.

17          **MR. DANIELS:** Your Honor, the Court mentioned that it

18   was accepting the plea but --

19          **THE COURT:** I said I am accepting the plea, and I'm

20   deferring a decision on the Plea Agreement.

21          **MR. DANIELS:** Oh, okay. I misunderstood the Court.

22   I want Mr. Daniels to know that because what I heard was that.

23   Okay, all right.

24          **THE COURT:** If I misspoke, I'm glad I've had the

25   opportunity to clarify it now.

1      I think that is all, Mr. Daniels.  I will plan to see

2  you June 29, 2022.  If for any reason that date changes, I

3  will enter an order, and your attorney will get it.  And --

4  well, I'll enter a notice.  Your attorney will get it, and

5  let you know.  But until then, I will see you on June 29.

6      Did I miss anything?  Let me ask that before I go off

7  the record?

8          **MR. ROBERTS:**  I'm not aware of anything, Your Honor.

9          **MR. DANIELS:**  No, ma'am.  Thank you.

10          **THE COURT:**  Mr. Daniels is remanded, and this matter

11  is adjourned.

12          (Adjourned:  12:03  P.M.)

44

1                                    CERTIFICATE

2              I, Brenda D. Blackburn, Federal Official Court

3    Reporter, in and for the United States District Court for the

4    Northern District of Mississippi, do hereby certify that

5    pursuant to Section 753, Title 28, United States Code, that the

6    foregoing 43 pages are a true and correct transcript of the

7    stenographically reported proceedings held in the

8    above-entitled matter and that the transcript page format is in

9    conformance with the regulations of the Judicial Conference of

10   the United States.

11             Witness my hand, this 14th day of June, 2022.

12

13                              __BRENDA D. BLACKBURN_____
                                BRENDA D. BLACKBURN, RPR, CCR NO. 1087
14                              FEDERAL OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25